**Bernadine O'NEAL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17966.**

United States Court of Appeals
Ninth Circuit.

Nov. 21, 1962.

Edgar Paul Boyko, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Norman T. Ollestad, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was one of four defendants indicted for violation of Title 21 United States Code § 174. She was named in but two counts: Count V, charging the substantive crime of concealing narcotics on October 23, 1959; and Count VII, relating to a conspiracy to conceal, sell and transport forbidden narcotic drugs between October 15th and October 23rd, 1959.

The three codefendants entered pleas of guilty to one count each; the defendant O'Neal pleaded not guilty, and her case was tried before a jury. She was found guilty of both counts.

The testimony of codefendants was used against defendant O'Neal at the trial, and their sentencing delayed until the time of her sentence. Codefendant Patterson received five years on his plea of guilty to Count III; the other counts were dismissed. Defendant Stuart received ten years on his plea of guilty to Count I; and Counts II and VII were dismissed. Defendant O'Neal was sentenced to ten years imprisonment on each conviction, and said sentences were ordered to run concurrently.

This defendant's appeal was originally dismissed on February 20, 1961, along with those of the other defendants, for lack of prosecution. On December 6, 1961, defendant O'Neal's right to appeal was reinstated, and thereafter she was granted leave to proceed in forma pauperis, under date of January 15, 1962.

Appellant makes three points in her argument to this court. First, a claimed lack of jurisdiction because there was no direct evidence of possession by defendant O'Neal of the narcotic drug in question; second, that there was insufficient evidence to support the substantive charge of concealment of the heroin involved in Count V, and insufficient evi-

dence of participation in the conspiracy charged in Count VII. Third: That appellant was deprived of a fair trial by reason of the admission of incompetent evidence; by the misconduct of government counsel; and by the giving of plainly erroneous jury instructions.

█ We can quickly dispose of the last issue by reciting: (a) that no objection was made to the instructions as given; (b) no proposed instructions requested by this defendant were refused; (c) there is no compliance with this court's rules with regard to specification of the instructions alleged to have been erroneous; and (d) the instructions given are in full accord with the requisite instructions in a case of this kind. Cf. Johnson v. United States, 9 Cir. 1959, 270 F.2d 721. The alleged misconduct of counsel is de minimis, and the alleged incompetent evidence will be touched on later.

█ With respect to appellant's first two points, we point out that a careful reading of the transcript discloses that there was evidence, if believed, that defendant O'Neal went with defendant Clark to Tijuana, Mexico, on October 14, 1959, and returned in an automobile in which she was alleged to have some interest (i. e., there was testimony that she had helped to make a down payment thereon), with the knowledge that coming across the border into the United States and driving north there existed illegal heroin upon which no duty had been paid concealed in the directional light recess or equipment of the automobile.

A meeting of the alleged coconspirators after the return from Tijuana shows the following occurred:

"Q. Was there any discussion of narcotics at that time?

"A. Yes. They told me about the trip. We discussed the trip. That the narcotics were placed in a certain part of the car.

"Q. When you say narcotics, what type of narcotics are you referring to?

"A. I am referring to heroin.

"Q. You say they were placed in a certain portion of the car. Do you know in what portion of the car?

"A. They told me the directional lights. I remember that distinctly because Miss O'Neal said that Mr. Clark inadvertently used the directional signal and she warned him against it because it would cause suspicion, since they were out of order." (Tr. p. 51, ll. 5–17.)

This was testimony given by the defendant Patterson. This is *not* evidence of appellant's knowledge that the heroin which was the subject of the substantive Count V indictment was illegally brought across the border, or that she had possession thereof nine days later on October 23, 1959. However, it does demonstrate, if the witness Patterson is to be believed, that the appellant had knowledge of plans by her alleged fellow conspirators to import heroin illegally into this country from Mexico. We add to this the discussion of the "cutting" or "packaging" of the heroin, had on October 23, 1959 in the house occupied by appellant O'Neal. Present at this conversation were the appellant O'Neal, defendant Clark and defendant Patterson.

"Q. Was there any conversation at that time with regard to events that were to take place that day? [The proposed sale.]

"A. Yes. We talked about what materials we had to get to take care of the sale.

"Q. When you say 'materials,' Mr. Patterson, could you explain to the jury and the Court what you mean by 'materials'?

"A. Well, we had to find a suitable package for this large amount of heroin, so we discussed a plastic bag, and there was also a discussion of the milk sugar that was used to cut it with; just the articles necessary.

"Q. Could you name the people present at this conversation?

"A. Miss O'Neal and Mr. Clark and I.

"Q. Was there any other conversation that morning?

"A. Miss O'Neal asked me how I felt about making the transaction and I told her that I didn't have any qualms about it." (Tr. p. 62.)

This testimony shows that appellant O'Neal had considerable knowledge of the conspiracy and of its purpose, and had at least constructive possession of the heroin on October 23, 1959. It is this of which she is accused of concealing in Count V.

When we add to these the numerous occasions when appellant O'Neal answered the telephone in reply to the undercover agent's attempts to buy narcotics from her associates; and when we recall that Patterson, the barber, was given marijuana as compensation for his acting as a messenger in the delivery of heroin, by the appellant O'Neal, we cannot say, as a matter of law, that there is insufficient evidence to connect the appellant both with the concealment of narcotics on October 23, 1959, as was alleged in Count V, and her connection as an active participant in the conspiracy which allegedly existed between the 15th and 23rd of October of that same year.

Appellant relies largely (entirely in her reply brief) upon the holding of Glover v. United States, 10 Cir. 1962, 306 F.2d 594. In that case, Glover was seen in the vicinity of a "transaction," i. e., in the vicinity of where a sale of narcotics was taking place. There was evidence on one occasion that defendants Glover and Irvin (from whom the purchase was made) had had a conversation, but there was no evidence of what was said. There was evidence that when defendant Glover was asked by a special employee of the Bureau of Narcotics if they could do some business together, that Glover had answered that they could not until an apparent codefendant got back. As the court said in Glover:

"There was no evidence that Glover participated in the unlawful sales and deliveries of the heroin made by Irvin, or that he in anywise aided or abetted Irvin in the commission of such offenses." (Id. p. 595.)

The court then refers to statements made by Irvin incriminating Glover and held that they were not admissible against Glover because they were not made in his presence and hearing, and the government had not established by independent evidence the existence of a conspiracy between him and Irvin.

The evidence here of the trip to Tijuana made by defendant Clark and appellant O'Neal in order to obtain heroin, its illegal transportation into the United States within the directional light, and the conversation with relation thereto, all took place in appellant O'Neal's presence, and were not hearsay as to her. We do not find the per curiam opinion in Glover, supra, controlling in the slightest under the facts of this case.

There were certain incriminating statements made against appellant by the codefendant Patterson, but this line of testimony (Tr. pp. 78–79) was brought out by appellant's own counsel on cross-examination of the witness Patterson. No objection to this testimony was made at time of trial; no motion to strike the answers was made at any time; and no error was alleged in appellant herself putting such evidence before the jury. Under such circumstances, it cannot be held to be such plain error as to result in a manifest miscarriage of justice. There existed ample remaining legally admissible evidence establishing appellant's connection with the conspiracy and her possession, knowledge and concealment of, the heroin.

Finding no error, the judgments of conviction are affirmed.